UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| KANTI GALA, an individual; HEMI GALA, an individual; GALA WORLDWIDE, INC., a Virginia corporation,<br><br>    Plaintiffs,<br><br>vs.<br><br>WILLIAM B. BRITT, an individual; PEGGY BRITT, an individual; KANTI GALA (II), an individual; BRITT WORLDWIDE, LLC, a Nevada limited liability company; TRINITY EDUCATIONAL SYSTEMS, LLC, a Nevada limited liability company,<br><br>    Defendants. | Case No.: 2:10-cv-00079-RLH-RJJ<br><br>**O R D E R**<br><br>(Motion to Dismiss–#15; Application for Confirmation of Arbitration Award and Entry of Judgment–#17; Motion to Vacate–#50) |

   Before the Court is Plaintiff Kanti Gala, Hemi Gala, and Gala Worldwide, Inc.'s (collectively "Plaintiffs") **Motion to Dismiss** (#15), filed June 21, 2010. Also before the Court is Defendants William B. Britt, Peggy Britt, Kanti Gala (II)[1], Britt World Wide, LLC ("BWW"), and Trinity Educational Systems, LLC's ("Trinity") (collectively "Defendants") **Application for Confirmation of Arbitration Award and Entry of Judgment** (#17), filed June 21, 2010. Also

---

[1] Kanti Gala (II) is a different party than Kanti Gala.  The two are not related.

1

before the Court is Plaintiffs' **Motion to Vacate** (#50), filed October 28, 2010. The Court has also considered the various responses, replies, joinders, and errata filed by Plaintiffs and Defendants. In addition, the Court heard the parties' oral arguments relating to these motions on December 1, 2010.

## BACKGROUND

The parties are Independent Business Operators (IBOs) and companies involved in the Amway distribution business. The Galas are in the Line of Sponsorship of the Britts. Britt Worldwide, LLC, is a Nevada business entity established by the Britts, which the Galas joined by invitation in 2002. Trinity is also a Nevada LLC formed by the Britts as part of their Amway related business. A dispute arose between the Britts and the Galas, and the Galas filed a Demand for Arbitration under the Amway Global Rules of Conduct ("Amway Rules") and selected an arbitrator. During the course of the arbitration proceedings, the arbitrator determined that the proceedings should proceed under the arbitration rules of the Britt Worldwide operating agreement, which uses the AAA rules. Under the AAA rules, the arbitrator allowed the Britts to bring counterclaims in the arbitration that would have been time barred under the Amway Rules.

After these determinations by the arbitrator, the Galas, adding various parties as plaintiffs and defendants, sought relief in this Court. They filed a Motion to Stay (Dkt. #4, Feb. 22, 2010), which the Court denied in its Order (Dkt. #19), dated June 28, 2010. Therefore, the arbitration was never stayed. In the interim, however, the Galas decided to stop participating in the arbitration proceedings that they had initiated. The Galas did not even present argument at the arbitration hearing when the arbitrator invited them to argue in favor of postponing the proceedings. Thus, the arbitrator did not stop the proceedings and continued to adjudicate the dispute between the Britts and the Galas without the Galas participating.

A final arbitration hearing was conducted on March 1, 2010. On March 12, the arbitrator entered a Interim Award (Dkt. #17, Ex. 5). This Interim Award again invited the parties to argue against the entry of the Interim Award as a Final Award by a specific date. The Galas

2

failed to do so. The arbitrator entered a Final Award on March 29 (Dkt. #17, Ex. 6). This Final Award dismissed the Galas' claims with prejudice, granted $5,184,099.77 in damages to the Britts' on their counterclaims, and awarded costs of $5,500.00 to the Britts' because the Galas' ceased paying their share of the arbitration fees and the Britts covered those expenses.

The Defendants filed both their Motion to Dismiss (#15) and their Application for Confirmation of Arbitration Award and Entry of Judgment (#17) with this Court on June 21, 2010, following the arbitrator's entry of the Final Award. Plaintiffs opposed these motions on July 9, and asked the Court to treat their opposition as a motion to vacate. Plaintiffs later brought an actual Motion to Vacate (#50) on October 28. The Court held a hearing on the motions on December 1, 2010. For the reasons stated below, the Court grants Defendants' motion and application and denies Plaintiffs' motion.

## DISCUSSION

### I. Motion to Dismiss

Defendants argue that the Plaintiffs' claims should be dismissed for three reasons. First, Defendants argue that the Court does not have jurisdiction over the individual defendants William Britt, Peggy Britt, or Kanti Gala (II) (collectively "individual Defendants"). As will be explained below, the Court disagrees. Second, Defendants argue that Plaintiffs failed to adequately plead their claims in their complaint. Here, the Court agrees and dismisses Plaintiffs claims on this basis. Third, Defendants argue that Trinity should be dismissed because Plaintiffs' make no claims explicitly against it. Because the Court otherwise dismisses Plaintiffs' claims, this third argument is moot.

#### A. Personal Jurisdiction

##### 1. Legal Standard

Rule 12(b)(2) of the Federal Rules of Civil Procedure provides that a court may dismiss a complaint for "lack of jurisdiction over the person." "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of

AO 72
(Rev. 8/82)

1  demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374
2  F.3d 797, 800 (9th Cir. 2004). A court evaluating such a motion may consider evidence presented
3  in affidavits to assist in its determination and may order discovery on the jurisdictional issues.
4  *Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). Where a court
5  proceeds on the basis of affidavits and without discovery and an evidentiary hearing, "the plaintiff
6  need only make a prima facie showing of jurisdiction to avoid the defendant's motion to dismiss,"
7  that is, demonstrate facts that, if true, would support jurisdiction over the defendant. *Harris*
8  *Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003).
9  "Conflicts between parties over statements contained in affidavits must be resolved in the
10  plaintiff's favor." *Fred Martin Motor Co.*, 374 F.3d at 800.

11        The Ninth Circuit has established a two-step test to determine the propriety of
12  asserting personal jurisdiction over an out-of-state defendant. The plaintiff must first demonstrate
13  that personal jurisdiction is: (1) permitted under the applicable state's long-arm statute; and (2)
14  that the exercise of jurisdiction does not violate federal due process. *Pebble Beach Co. v. Caddy*,
15  453 F.3d 1151, 1154 (9th Cir. 2006). Because Nevada's long-arm statute reaches to the full limits
16  of due process, this Court need only decide whether the exercise of personal jurisdiction will
17  comport with the constitutional requirements of due process. *Hoag v. Sweetwater Int'l*, 857
18  F.Supp. 1420, 1424 (D. Nev. 1994). Additionally, the Court must analyze whether personal
19  jurisdiction exists over each defendant separately. *Harris Rutsky*, 328 F.3d at 1130 (9th Cir.
20  2003).

21        Under the U.S. Constitution, an out-of-state defendant must have "minimum
22  contacts" with the forum state so that the exercise of jurisdiction does not offend "traditional
23  notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316
24  (1945). The minimum contacts analysis requires a court to determine whether the nonresident
25  defendant "has purposefully avail[ed] itself of the privilege of conducting activities within the
26  /

4

forum state, thus invoking the benefits and protection of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citation omitted).

### 2.  General Jurisdiction

There are two types of personal jurisdiction that a court may have over a non-resident defendant: general jurisdiction and specific jurisdiction. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414–15 (1984); *see also Reebok Int'l Ltd. v. McLaughlin*, 49 F.3d 1387, 1389 (9th Cir. 1995).

A court may exercise general jurisdiction over a nonresident defendant only if the defendant's purposeful contacts with the forum state are "continuous and systematic." *Helicopteros*, 466 U.S. at 414–16.  In such a case, it is not necessary that the specific cause of action alleged be connected with the defendant's business relationship to the forum because "[g]eneral jurisdiction provides for jurisdiction without consideration of the claim asserted, if a defendant's activities in the forum state can fairly be characterized as 'continuous and systematic.'" *Graziose v. American Home Products Corp.*, 161 F.Supp.2d 1149, 1152 (D. Nev. 2001) (citing *Helicopteros*, 466 U.S. at 414).

The individual Defendants argue that they do not have substantial or continuous and systematic personal contacts with Nevada. (Defendants do not dispute jurisdiction over the LLC Defendants.)  As part of this assertion, they explain that they have no bank accounts, personal property, residences, offices, or addresses in Nevada and that they have never lived in Nevada. They further argue that they have only been in the state a few times over the last ten years for pleasure and Amway conventions.  What they fail to mention is that Bill and Peggy Britt formed 15 different business entities in Nevada between 1993 and 2005.  (Dkt. #63, Supplement Mot., Dec. 6, 2010.)  This includes the Defendants BWW and Trinity.  (*Id.*)  Eight of these entities are still active.  (*Id.*)  Kanti Gala II is or was a managing member of two Nevada LLCs, including BWW.  (*Id.*)  Whereas membership in a single LLC or being a director of a single corporation may not constitute sufficient contact with Nevada, the Court finds that their repetitive use of Nevada's

corporate laws to create and manage business entities represents sufficiently continuous and systematic contact with Nevada for the Court to exercise general jurisdiction over these individual Defendants. Because the Court has general jurisdiction over the individual Defendants, the Court need not address whether it has specific jurisdiction over the same Defendants.

### B.   Failure to State Valid Claims

#### 1.   Legal Standard

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (internal citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id*. at 1950. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id*. at 1949. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id*. at 1950. A claim is facially plausible when the plaintiff's complaint alleges facts that allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 1949. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." *Id*. (internal

quotation marks omitted).  When the claims in a complaint have not crossed the line from conceivable to plausible, plaintiff's complaint must be dismissed.  *Twombly*, 550 U.S. at 570.

### 2.     Analysis

As explained below, Plaintiffs have not met their pleading burden on their claims for fraudulent inducement or defamation.  Therefore the Court dismisses these claims.  Also, because of the underlying arbitration and the apparent attempt to bypass the prior arbitration decisions with this lawsuit, the Court dismisses these claims with prejudice.  The Court also dismisses Plaintiffs remaining claims because of the underlying arbitration.

#### i.     Fraudulent Inducement

The Federal Rules of Civil Procedure require particularity when pleading fraud.  Fed. R. Civ. P. 9(b).  Pleading fraud with particularity requires "an account of the time, place, and specific content of the false representations, as well as the identities of the parties to the misrepresentations."  *Swartz v. KPMG, LLP*, 476 F.3d 756, 764 (9th Cir. 2007).  A plaintiff must also describe "what is false or misleading about a statement, and why it is false."  *In re Glenfeld, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994).  Finally, "[t]he role of each defendant in the alleged fraudulent activities should be specified."  *Arroyo v. Wheat*, 591 F. Supp. 136, 139 (D. Nev. 1984).

The Plaintiffs failed to plead their fraudulent inducement claim with the requisite particularity.  Plaintiffs do not indicate the time and place where the alleged statements were made.  They do not explain how the alleged statements were false or misleading.  Plaintiffs do not even allege who made the statements but merely allege generally that the "Defendants" did so.  Because Plaintiffs have not met the requirements of Rule 9(b) and the reasons stated above the Court dismisses their fraudulent inducement claim with prejudice.

#### ii.     Defamation

In Nevada, a defamation claim requires that the plaintiff allege: (1) a false and defamatory statement of fact by the defendant concerning the plaintiff; (2) an unprivileged

publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages. *Showdry v. NLVH*, 851 P.2d 459, 462 (Nev. 1993). A plaintiff must plead these elements with factual specificity in order to withstand a motion to dismiss. *See Blank v. Hager*, 360 F.Supp.2d 1137, 1160 (D. Nev. 2005) (dismissing a defamation claim for failing to identify when and to whom the defendant allegedly made the defamatory statements). However, "[i]f the defamation tends to injure the plaintiff in his or her business or profession, it is deemed defamation per se, and damages will be presumed." *Showdry*, 851 P.2d at 462. Essentially, a complaint is insufficient to withstand a 12(b)(6) attack where the complaint does not set forth facts beyond mere allegation indicating what defamatory statements were made, when they were made, who made them, or to whom they were made.

Plaintiffs do not allege the requisite elements for a defamation claim. Plaintiffs failed to state what allegedly defamatory statements Defendants made, which of the Defendants made the statements, or to whom the Defendants made the statements. The complaint merely contains conclusory statements that "Defendants knowingly made false and defamatory statements about Plaintiffs to individuals and IBOs in Plaintiffs' down-line network" and that such "statements included false and disparaging remarks about Plaintiffs' business practices, commitment to customers, and financial transactions." (Dkt. #1, Compl. ¶¶ 56–57). Such cursory and generalized allegations cannot support a defamation claim. For these and the above stated reasons, the Court dismisses the claim with prejudice.

### iii. Remaining Claims

Plaintiffs remaining claims are for breach of contract, breach of the implied covenant of good faith and fair dealing, wrongful termination, and unjust enrichment. These claims directly relate to the underlying arbitration and the matters settled in that arbitration. As further explained below, these matters were settled by the arbitration and the confirmation of the arbitration award which the Court now grants. As such, they are not properly brought here and the Court dismisses the remaining claims with prejudice.

8

## II.    Motion to Vacate

### A.    Time Bar

The Plaintiffs' request to vacate the arbitration award is time-barred and therefore fails.  Under the Federal Arbitration Act a party has three months from the entry of a final award in an arbitration to serve a motion to vacate, modify, or correct such award.  9 U.S.C. § 12.  The Ninth Circuit has held that "an unsuccessful party at arbitration who did not move to vacate the award within the prescribed time may not subsequently raise, as affirmative defenses in a suit to enforce the award, contentions that it could have raised in a timely petition to vacate the award." *Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda Cnty v. Celotex Corp.*, 708 F.2d 488, 490 (9th Cir. 1983); *see also Sheet Metal Workers' Int'l Ass'n, Local No. 252 v. Standard Sheet Metal, Inc.*, 699 F.2d 481, 483 (9th Cir. 1983).  "A motion to vacate an arbitration award after the three months prescribed time is not permitted, even if filed as part of an opposition to a motion to confirm an arbitration award or to assert new claims." *Romero v. Citibank USA, National Ass'n*, 551 F.Supp.2d 1010, 1013 (C.D. Cal. 2008) (citing *Brotherhood of Teamsters*, 708 F.2d at 490).

Plaintiffs did not meet the statutory time requirements to vacate the arbitration award.  The arbitrator entered a Final Award on March 29, 2010.  The Plaintiffs did not directly contest this award until their July 9, 2010 Objection (#21), and did not file an actual Motion to Vacate (#50) until October 28, 2010.  Both of these filings came more than three months after the award was entered.  Each argument Plaintiffs present to the Court for vacating the award could have been raised in a timely fashion, but was not.  The Plaintiffs also argue that their Motion to Stay (#4) should be considered a motion to vacate or that the Court should convert it into a motion to vacate because in their Reply they asked the Court to "set aside any proceedings that occurred since the date of the filing of this action." (Dkt. #7, March 22, 2010).  The Court disagrees.  The Court denied the Motion to Stay and therefore denied any requests within the motion and the

/

AO 72
(Rev. 8/82)

1  Reply.  Therefore, the Court finds that the arguments in the opposition and the Motion to Vacate
2  are time barred.

3  **B.     Plaintiffs Substantive Arguments to Vacate the Award**

4  As stated above, Plaintiffs' Motion to Vacate is time barred.  Nonetheless, even if
5  the Motion to Vacate was not time barred, Plaintiffs' substantive arguments still fail.  The Court
6  will briefly address some of these arguments.

7  **i.     Failure to Participate**

8  Plaintiffs argue that the Defendants should not be entitled to enforce the arbitration
9  award because there was no hearing, no discovery, and no arbitration on the merits.  The essence
10 of this argument may be true, though there were some hearings and briefing in the arbitration,
11 however, the argument is immaterial.  The only reason that none of this occurred is because
12 Plaintiffs unilaterally decided to cease participating in the arbitration after they received an
13 unfavorable ruling from the arbitrator.  Plaintiffs then decided to come to this Court and abandon
14 the arbitration proceedings hoping to be more successful here.  While Plaintiffs' Motion to Stay
15 (#4) was pending the arbitrator was under no duty to halt his proceedings.  However, Plaintiffs
16 were still obligated to participate.  They did not.  This choice is not reason to deny confirmation or
17 vacate the award.  Further, the Court determined in its Order (#19) denying the Motion to Stay that
18 the arbitrator acted within his jurisdiction when he proceeded under the BWW operating
19 agreement arbitration clause rather than Amway Rule 11.  Therefore, any arguments about whether
20 the arbitrator exceeded his authority in proceeding under the BWW arbitration clause are
21 foreclosed.

22 **ii.    Unconscionability**

23 The Galas also rely on a recent Ninth Circuit case, *Pokorny v. Quixtar, Inc.*, 601
24 F.3d 987 (9th Cir. 2010), in arguing that the arbitration was unconscionable and any decision in
25 the arbitration should be overturned.  As the Court previously explained, these arguments are both
26 untimely and substantively flawed.  *Pokorny* dealt with the Quixtar/Amway arbitration rules, the

AO 72
(Rev. 8/82)

same rules that Plaintiffs wanted to use in their arbitration. In *Pokorny*, however, the plaintiffs originally filed their action in the district court. The *Pokorny* defendants, including the William and Peggy Britt who are defendants in this case, then sought to compel arbitration. Here, Plaintiffs brought the arbitration proceedings and tried to get out of arbitration only *after* obtaining what they considered negative rulings.

Further, *Pokorny*'s finding of unconscionability is inapplicable here because of the parties relative bargaining power. The *Pokorny* decision relied on the fact that the dispute was between Quixtar and Junior IBOs. Here, the dispute is between two groups of high-level IBOs and business entities that they created. Particularly, the parties who agreed to the BWW Operating Agreement, which contained the arbitration clause actually used by the arbitrator, enjoyed relatively equal bargaining power. Although the BWW Operating Agreement may have been proposed as a take-it-or-leave-it deal, it was entered into by sophisticated business parties—not between a global corporation and ordinary consumers seeking to be IBOs like in *Pokorny*. Also, the "bilaterality" discussion in *Pokorny* is inapplicable here. Unlike *Pokorny* where the Quixtar/Amway Rules were not equally applicable to Quixtar and the lower level IBOs, here the rules are equally applicable between the parties in this case, who are all high level IBOs. In addition, the arbitration clause in the BWW Operating Agreement, which the arbitrator applied, is bilateral and equally enforceable and applicable to each party. Therefore, the analysis in *Pokorny* is inapplicable in this case. Consequently, the Court finds no unconscionability present to overturn the arbitration agreement.

### III.   Application for Confirmation

BWW's Application for Confirmation of the Arbitration Award (#17) satisfies all applicable statutory requirements for confirmation of an arbitration award. A party may apply to the court for an order confirming an arbitration award anytime within one year after the award is made. 9 U.S.C. § 9. Although a party is not required to do so, if it does apply for confirmation, "the court must grant such an order unless the award is vacated, modified, or corrected as

prescribed in [9 U.S.C. §§ 10–11]." 9 U.S.C. § 9.  BWW's application was timely and met the statutory requirements for an application.  *See* 9 U.S.C. §§ 9–13 (providing the requirements for confirmation of an arbitration award).  Plaintiffs do not make any viable arguments against entry of the award and those arguments that they do make will be addressed below in the section on Plaintiffs' Motion to Vacate.  Therefore, the Court grants the application and confirms the award.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (#15) is GRANTED with prejudice.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Vacate (#50) is DENIED.

IT IS FURTHER ORDERED that Defendants' Application for Confirmation (#17) is GRANTED and the arbitration award entered on March 29, 2009 (#17, Ex. 6) is confirmed.

Dated: December 15, 2010.

_____
**ROGER L. HUNT**
**Chief United States District Judge**